**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNETH KAMAKANA,
                    *Plaintiff-Appellee,*

UNITED STATES OF AMERICA,
                    *Intervenor-Appellant,*

GANNETT PACIFIC CORPORATION, dba
The Honolulu Advertiser,
                    *Intervenor-Appellee,*

                    v.

CITY AND COUNTY OF HONOLULU;
LEE DONOHUE, in his official
capacity; MILTON OLMOS, in his
official capacity,
                    *Defendants-Appellants,*

                    and

LEE DONAHUE, individually;
MILTON OLMOS, individually,
                    *Defendants.*

No. 04-15241

D.C. No.
CV-00-00729-LEB- BMK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, Magistrate Judge, Presiding

Argued November 17, 2005
Submitted May 11, 2006
Honolulu, Hawaii

Filed May 17, 2006

Before: Robert R. Beezer, Michael Daly Hawkins, and
M. Margaret McKeown, Circuit Judges.

5391

Opinion by Judge McKeown

## SUMMARY

### Civil Litigation and Procedure/Discovery - Confidentiality

The court of appeals affirmed a judgment of the district court. The court held that a good cause showing alone will not suffice to fulfill the "compelling reasons" standard that a party must meet to rebut the presumption of access to dispositive pleadings and attachments.

Appellee Kenneth Kamakana, a Honolulu police detective, filed suit in district court in Hawaii claiming retaliation by the appellant the city of Honolulu for his whistleblower activities. The crux of his claim was that he was transferred in retaliation for his reporting misconduct by other officers to his superiors and the FBI. During the litigation, scores of documents were filed under seal in accord with a stipulated protective order. The case settled before trial and Kamakana stipulated to dismiss all of his claims. On the motion of intervenor appellee Gannett Pacific Corporation/The Honolulu Advertiser (Honolulu Advertiser), the magistrate judge undertook a detailed and exhaustive review of the protective order. The magistrate judge ordered, subject to limited specified exceptions, the transcripts and documents to be unsealed. The city and appellant the United States moved for reconsideration. The city's motion simply objected that the city was not given enough time to articulate such compelling reasons. Similarly the United States' submission detailed no compelling reasons, arguing only that the Honolulu Advertiser had not objected to the United States' proposed redactions. The magistrate judge reasoned that an intervening change in controlling law, *Foltz v. State Farm Mutual Auto Insurance Company*, 331 F.3d 1122 (9th Cir. 2003), compelled her to reconsider and con-

clude that almost all of the documents attached to the dispositive motions should be unsealed because no compelling reason rebutted the presumption of public access.

The city and the United States appealed.

[1] Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents. [2] Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point. [3] Compelling reasons must be shown to seal judicial records attached to a dispositive motion. The "compelling reasons" standard is invoked even if the dispositive motion, or its attachments, were previously filed under seal or protective order. [4] The Ninth Circuit has, however, carved out an exception to the presumption of access to judicial records, for a sealed discovery document attached to a nondispositive motion, such that the usual presumption of the public's right of access is rebutted. [5] A "good cause" showing under Federal Rule of Civil Procedure 26(c) will suffice to keep sealed records attached to nondispositive motions. [6] A good cause showing alone will not suffice to fulfill the "compelling reasons" standard that a party must meet to rebut the presumption of access to dispositive pleadings and attachments.

[7] The city was required to present articulable facts identifying the interests favoring continued secrecy. [8] The city did have a chance to show compelling reasons and squandered it. Rather than identifying or even attempting to articulate compelling reasons, the city's motion to reconsider simply objected that the city was not given enough time to articulate such compelling reasons. [9] It had to be concluded that the magistrate judge did not abuse her discretion in declining to seal the documents attached to summary judgment motions.

[10] The Ninth Circuit has held that a non-party's reliance on a blanket protective order is unreasonable and is not a

compelling reason that rebuts the presumption of access. **[11]** The order contained no good cause findings as to specific documents that would justify reliance by the United States. Thus, the claimed reliance on the order was not a compelling reason that rebutted the presumption of access. **[12]** A "good cause" showing without more will not satisfy a "compelling reasons" test. Because the United States simply resubmitted its good cause showing without more, the magistrate judge was well within her discretion to deny the redactions it sought under the compelling reasons standard.

**[13]** The privacy, law enforcement, and official information privileges do not automatically fall within the "traditionally kept secret" exception. **[14]** Thus far, the Ninth Circuit has identified two types of documents as traditionally kept secret: grand jury transcripts and warrant materials during the pre-indictment phase of an investigation. Though these documents may roughly fall into the category of law enforcement, they are very specific types of documents that warrant the highest protection. Simply invoking a blanket claim, such as privacy or law enforcement, will not, without more, suffice to exempt a document from the public's right of access. **[15]** Neither will it suffice to show that a document merits sealing because it would be exempt from disclosure under the Freedom of Information Act. Such exempt documents are not automatically privileged in civil discovery.

**[16]** It had to be held that the magistrate judge did not abuse her discretion in ordering the city to produce documents attached to non-dispositive motions.

## COUNSEL

Jerold T. Matayoshi, Fukunaga, Matayoshi, Hershey & Ching, Honolulu, Hawaii, for the defendant-appellant.

Steve Frank, U.S. Department of Justice, Civil Division, Washington, DC, for the intervenor-appellant.

William J. McCorriston, McCorriston Miller Mukai MacKinnon, Honolulu, Hawaii, for the plaintiff-appellee.

Jeffrey S. Portnoy, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for the intervenor-appellee.

# OPINION

McKEOWN, Circuit Judge:

We consider whether court records, originally filed under seal as attachments to motions in a civil action alleging police corruption, must be released to a newspaper under the common law right of access. This appeal stems from a suit by Kenneth Kamakana, a Honolulu police detective, claiming retaliation by the City and County of Honolulu for his whistleblower activities. Although that suit settled and its merits are not at issue here, during the litigation scores of documents were filed under seal in accord with a stipulated protective order. On the motion of intervenor Gannett Pacific Corporation/The Honolulu Advertiser ("Honolulu Advertiser"), the magistrate judge undertook a detailed and exhaustive review and unsealed virtually all of the pleadings and documents. The City and County of Honolulu, as well as Lee Donohue and Milton Olmos in their official capacities (collectively the "City"), with the United States as intervenor, challenge that order. We affirm.

## BACKGROUND

## I. KAMAKANA'S CASE

Kamakana was a detective in the Honolulu Police Department (HPD). From 1991 to 2000, he was in the elite Criminal

Intelligence Unit (CIU), which investigates organized crime. In September 2000, Kamakana was transferred out of CIU. The following year, the department's Internal Affairs division initiated criminal and administrative investigations against Kamakana.

Shortly after his transfer in 2000, Kamakana filed a civil rights action against the City and others, alleging that the City violated his free speech rights, conspired to violate his civil rights, and retaliated against him as a whistleblower. The crux of his claim was that his transfer was in retaliation for his reporting misconduct and illegal acts by other HPD officers to his superiors and the Federal Bureau of Investigation.

After discovery and other pre-trial proceedings, the parties filed motions for summary judgment under seal. The district court denied, in large part, the City's motion and Kamakana's cross-motion for partial summary judgment on his whistle-blowing claim. The case settled before trial and Kamakana stipulated to dismiss all of his claims.

## II.   SEALED DOCUMENTS AND THE HONOLULU ADVERTISER'S INTERVENTION

We recount in detail the procedural background as it provides context for the unsealing order. In June 2001, the magistrate judge approved an amended, stipulated protective order, which restricted access to discovery materials to parties and counsel and limited their use solely for the litigation. Discovery began in earnest following entry of the protective order. In December 2001, the City served the United States, a third party, with requests for witness depositions and documents.

In accord with the protective order, the parties sought court permission to file their summary judgment pleadings under seal. The district court granted the motion but stated, "The court reserves the right to unseal materials filed under seal if, upon reviewing the sealed materials, the court determines that

they should be available to the public or otherwise do not merit sealed status."

In the fall of 2002, the Honolulu Advertiser filed a motion to intervene for the limited purpose of modifying the protective order and unsealing the judicial record. The magistrate judge granted the motion to intervene and modified the protective order. Because the parties had simply stipulated to the protective order, a particularized showing of "good cause" to keep the documents under seal had never been made to the court as required by Federal Rule of Civil Procedure 26(c). The magistrate judge ordered the parties to submit all materials they wished to keep sealed along with "specific averments as to why good cause exists." The order noted that "[t]he burden of showing good cause will be on the party seeking to keep the information and/or documents confidential." The court declined at that time to determine whether the public had a common law right to access the documents because "such a determination is necessary only after it is shown that good cause exists to restrict disclosure."

Slightly different procedures applied to the City and the United States. The court ordered the City to submit its materials to a special discovery master for good cause determinations under Rule 26(c). Though not yet an intervenor at the time, the United States was directed to submit materials directly to the magistrate judge for an *in camera* good cause analysis.

In February 2003, the United States submitted transcripts and documents for the *in camera* review. In June 2003, the magistrate judge ordered, subject to limited specified exceptions, the transcripts and documents to be unsealed.

After *in camera* inspection of the City's documents, the discovery master issued a report and recommendation in February 2003 that listed general categories of documents to remain sealed and redactions to be made. The magistrate

judge rejected the report and ordered the special master to identify specific documents to be sealed. Following this directive, the special master submitted an amended report and recommendation, categorizing each document as sealed, unsealed, or unsealed with redactions based on the good cause standard. The magistrate judge adopted the report and the City immediately filed a motion to reconsider, which the judge took under advisement.

The City and the Honolulu Advertiser then met with the special master who took another look at various documents and issued another report and recommendation. In October 2003, the magistrate judge adopted this report. In the same order, the magistrate judge noted that the Ninth Circuit had decided in *Foltz v. State Farm Mutual Auto Insurance Company*, 331 F.3d 1122, 1135 (9th Cir. 2003), that "the presumption of access is not rebutted where documents which are the subject of a protective order are filed with the court as attachments to summary judgment motions" and that "to retain any protected status for documents attached to a summary judgment motion, the proponent must meet the 'compelling reasons' standard and not the lesser 'good cause' determination."

In response to this articulation of the controlling standard, the City and United States both sought reconsideration. The City's motion did not set forth "compelling reasons" to keep its documents secret. Instead, it asserted that the magistrate judge had not given the City enough notice to make such a showing. Similarly the United States' submission detailed no compelling reasons, arguing only that the Honolulu Advertiser had not objected to the United States' proposed redactions.

In an order dated January 22, 2004, the magistrate judge directed the production of most of the City's documents that were under seal. The magistrate judge reasoned that an intervening change in controlling law, the *Foltz* case, compelled her to reconsider and conclude that almost all of the docu-

ments attached to the dispositive motions should be unsealed because no "compelling reason" rebutted the presumption of public access. After an *in camera* inspection of the sealed documents, described as an "exhausting if not exhaustive" process, the magistrate judge held that there was no good cause to keep sealed most of the other materials, mainly non-dispositive motions and attachments. The magistrate judge displayed the fruits of her *in camera* labors in three detailed indices attached to the order—Exhibits A, B and C.[1]

As to the United States, in an order dated January 28, 2004, the magistrate judge required the unsealing of all the documents the United States had asked to keep protected, granting redactions related to the home addresses and Social Security numbers of law enforcement officers and Kamakana. No detailed index was necessary because the United States requested redaction of a manageable number of documents, all of which were attached to dispositive pleadings.

---

[1] Exhibit A, entitled "Documents Submitted for In Camera Review," is a 19-page index listing all documents the City wanted sealed or redacted, and specific rulings as to each of the 121 documents. Each document fell into one of three categories: (1) to be unsealed because the City had not shown good cause; (2) to be unsealed because it was attached to a dispositive pleading; or (3) to be redacted because the City had shown good cause. Eight documents were in the third group.

Exhibit B, entitled "Attachments to Dispositive Motions," is an 18-page index describing (1) each of the 85 documents the City sought to keep sealed or redact that were attached to dispositive pleadings, (2) the relevant dispositive pleading, and (3) the magistrate judge's ruling as to each document—either "no compelling reason" or the page number and specific information to be redacted because compelling reasons had been presented. Three of the documents were to be redacted.

Exhibit C, entitled "Pleadings & Attachments To Be Unsealed," is a 24-page index listing each pleading to be unsealed by docket number and document title. The index explains which documents attached to each of the 72 pleadings would be redacted. Four pleadings had attachments that were to be redacted and replaced.

The magistrate judge ordered the record unsealed by February 5, 2004. In advance of the deadline, the City, with the United States as *amicus curiae*, requested an emergency stay, which we granted. We also granted the United States' motion for intervention on appeal.

## ANALYSIS

The broad issue before us is whether the magistrate judge[2] abused her discretion in determining that continued secrecy was no longer warranted for almost all of the documents currently under seal.[3] To answer the question, we first provide a general overview of the common law right of access to judicial records and then consider whether the documents the City and the United States seek to protect are subject to the right of access.

## I. OVERVIEW OF THE RIGHT OF ACCESS TO JUDICIAL RECORDS

[1] Historically, courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978). This right is justified

---

[2]We have jurisdiction to hear this appeal directly from the magistrate judge's order because two conditions are met: (1) the district court explicitly designated a magistrate to conduct a jury trial or proceed to final judgment, and (2) the parties explicitly consented to magistrate judge jurisdiction. 28 U.S.C. § 636(c)(1); *Alaniz v. Cal. Processors, Inc.*, 690 F.2d 717, 720 (9th Cir. 1982). The Honolulu Advertiser and the United States, as limited intervenors, are not parties whose consent is required for appellate jurisdiction. *Cf. San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992).

[3]We review for abuse of discretion both the decision to modify the protective order, *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002), and the decision to unseal the judicial record, *San Jose Mercury News*, 187 F.3d at 1102.

by the interest of citizens in "keep[ing] a watchful eye on the workings of public agencies." *Id.* at 598. Such vigilance is aided by the efforts of newspapers to "publish information concerning the operation of government." *Id.*

Nonetheless, access to judicial records is not absolute. A narrow range of documents is not subject to the right of public access at all because the records have "traditionally been kept secret for important policy reasons." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989). Our case law has identified two categories of documents that fall in this category: grand jury transcripts and warrant materials in the midst of a pre-indictment investigation. *Id.*

[2] Unless a particular court record is one "traditionally kept secret," a "strong presumption in favor of access" is the starting point. *Foltz*, 331 F.3d at 1135 (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. *Foltz*, 331 F.3d at 1135. That is, the party must "articulate[ ] compelling reasons supported by specific factual findings," *id.* (citing *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102-03 (9th Cir. 1999)), that outweigh the general history of access and the public policies favoring disclosure, such as the " 'public interest in understanding the judicial process.' " *Hagestad*, 49 F.3d at 1434 (quoting *EEOC v. Erection Co.*, 900 F.3d 168, 170 (9th Cir. 1990)). In turn, the court must "conscientiously balance[ ] the competing interests" of the public and the party who seeks to keep certain judicial records secret. *Foltz*, 331 F.3d at 1135. After considering these interests, if the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad*, 49 F.3d at 1434 (citing *Valley Broadcasting Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1295 (9th Cir. 1986)).

In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Nixon*, 435 U.S. at 598; *accord Valley Broadcasting Co.*, 798 F.2d at 1294. The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records. *Foltz*, 331 F.3d at 1136.

**[3]** We acknowledged explicitly in *San Jose Mercury News*, 187 F.3d at 1102, and later confirmed in *Foltz*, 331 F.3d at 1136, that the strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments. We adopted this principle of disclosure because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the "public's understanding of the judicial process and of significant public events." *Valley Broadcasting*, 798 F.2d at 1294; *accord Foltz*, 331 F.3d at 1135-36 (noting that " 'summary judgment adjudicates substantive rights and serves as a substitute for trial' ") (quoting *Rushford v. The New Yorker Magazine*, 846 F.2d 249, 252 (4th Cir. 1988)). Thus, "compelling reasons" must be shown to seal judicial records attached to a dispositive motion. *Foltz*, 331 F.3d at 1136. The "compelling reasons" standard is invoked even if the dispositive motion, or its attachments, were previously filed under seal or protective order. *Id.* ("[T]he presumption of access is not rebutted where . . . documents subject to a protective order are filed under seal as attachments to a dispositive motion. The . . . 'compelling reasons' standard continues to apply.") (internal citations omitted).

**[4]** We have, however, "carved out an exception to the presumption of access" to judicial records, *Foltz*, 331 F.3d at

1135, for a "*sealed discovery document* [attached] to a *non-dispositive* motion," such that "the usual presumption of the public's right of access is rebutted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (emphasis added). There are, as we explained in *Foltz*, "good reasons to distinguish between dispositive and nondispositive motions." 331 F.3d at 1135. Specifically, the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often " 'unrelated, or only tangentially related, to the underlying cause of action.' " *Id.* (quoting *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 33 (1984)).

The public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials. *Phillips*, 307 F.3d at 1213. We reasoned in *Phillips* that when a district court grants a protective order to seal documents during discovery, "it already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Id.* The application of a strong presumption of access to sealed records, not directly relevant to the merits of the case, would eviscerate the "broad power of the district court to fashion protective orders." *Id.* Thus a "particularized showing," *Foltz*, 331 F.3d at 1138, under the "good cause" standard of Rule 26(c) will "suffice[ ] to warrant preserving the secrecy of sealed discovery material attached to nondispositive motions." *Id.* at 1135.

**[5]** In sum, we treat judicial records attached to dispositive motions differently from records attached to non-dispositive motions. Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that "compelling reasons" support secrecy. *Id.* at 1136. A "good cause" showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions. *Id.* at 1135.

It is important to emphasize the difference between the "compelling reasons" standard and the "good cause" standard, especially because the City suggests that they essentially collapse in this case.[4] A "good cause" showing will suffice to seal documents produced in discovery. Fed. R. Civ. P. 26(c) (stating that if "good cause" is shown in discovery, a district court may issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Rule 26(c) gives the district court much flexibility in balancing and protecting the interests of private parties. *Id.*

[6] A "good cause" showing will not, without more, satisfy a "compelling reasons" test. *See Foltz*, 331 F.3d at 1135-36; *Phillips*, 307 F.3d at 1212 (observing that even if a court finds "good cause" under Rule 26(c) to seal a document, it must still determine whether the common law right of access compels production). Different interests are at stake with the right of access than with Rule 26(c); with the former, the private interests of the litigants are not the only weights on the scale. Unlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default. *See Nixon*, 435 U.S. at

---

[4]Acknowledging that "compelling reasons" are required to keep under seal dispositive motions and attachments, the City argues that a previous showing of "good cause" suffices to satisfy the more demanding "compelling reasons" test. The City notes that it already had shown "good cause" before the January 22, 2004 order and that such a showing sufficed to keep its documents sealed under the "compelling reasons" standard.

The City also argues that the magistrate judge, in analyzing "good cause," had been analyzing "compelling reasons" all along without knowing it. Thus, the City maintains that the "very factors the Magistrate Judge used to determine 'good cause' were, by her own definition, identical to the factors to establish 'compelling reasons' " and that "where the Magistrate Judge found 'good cause' . . . , she must necessarily also have found 'compelling reasons' to protect the sealed documents. The difference, in this particular case, is one of lexicon." But, as we explain, the difference between the two standards is not merely semantic.

597. This fact sharply tips the balance in favor of production when a document, formerly sealed for good cause under Rule 26(c), becomes part of a judicial record. Thus a "good cause" showing alone will not suffice to fulfill the "compelling reasons" standard that a party must meet to rebut the presumption of access to dispositive pleadings and attachments.[5]

Having in mind these differences in the nature of the sealed filings and the applicable standards, we bifurcate our analysis, first considering records to which the "compelling reasons" standard applies—the documents attached to dispositive motions that the City and United States seek to keep sealed. We then analyze records to which the "good cause" standard applies—the documents attached to non-dispositive motions that the City alone seeks to keep sealed.

## II. DISPOSITIVE MOTIONS—DOCUMENTS COVERED BY THE "COMPELLING REASONS" STANDARD

### A. THE CITY

[7] Under our precedent, the City was required to present "articulable facts" identifying the interests favoring continued

---

[5]Perhaps based on its misconception of the overlap between the "compelling reasons" and "good cause" standards, the City mistakenly argues that the magistrate judge's decisions were inconsistent because certain materials she found "compelling reasons" to withhold were similar to other materials she ordered unsealed. The City observes that "for reasons unstated and unclear" the magistrate judge protected significant portions of the depositions of two former CIU detectives, but ordered the unsealing of depositions of 32 other witnesses who offered similar details about the case.

But the City failed to note a crucial difference between the depositions that will stay sealed and those that will be unsealed—the unsealed depositions were attached to dispositive motions. The depositions of the two former CIU officers were not attached to dispositive pleadings, and thus the lesser "good cause" showing sufficed to keep these depositions sealed. *See Phillips*, 307 F.3d at 1213.

secrecy, *Foltz*, 331 F.3d at 1136 (internal citation omitted), *and* to show that these specific interests overcame the presumption of access by outweighing the "public interest in understanding the judicial process." *Hagestad*, 49 F.3d at 1434 (citation omitted). Instead, the City complains that it had no chance to present compelling reasons, and that the magistrate judge failed "to even permit . . . a fair opportunity to be heard on the matter."

[8] But, in fact, the City did have a chance to show "compelling reasons" and squandered it. In the October 2003 order, the magistrate judge explicitly asked for motions for reconsideration of her order adopting the special master's report. She pointed to the issuance of *Foltz*, observing that "the Court concludes that, in order to retain any protected status for documents attached to a summary judgment motion, the proponent must meet the 'compelling reasons' standard and not the lesser 'good cause' determination." Rather than identifying or even attempting to articulate "compelling reasons," the City's motion to reconsider simply objected that the City was not given enough time to articulate such "compelling reasons."[6]

The City further argues that the magistrate judge failed to articulate reasons for *unsealing* the record even though it was the City's burden to articulate reasons for *sealing* the record, claiming that the January 22, 2004 order "deprived [the City]

---

[6]Perhaps as the result of its apparent misapprehension of what was necessary to overcome the presumption of access, some of the City's arguments suggest that it conflated principles applicable to the right of access. One section of its brief is titled "The Magistrate Judge Erred by Unsealing Dispositive Pleadings and Attachments Which Included Traditionally Protected Information, Filed Under Seal Pursuant to a Protective Order For Which Good Cause Had Been Shown." This approach implies a relationship between the concept of "traditionally kept secret" and the "good cause" standard under Rule 26(c). Elsewhere, the City suggested that the "traditionally kept secret" and "compelling reasons" standards were interchangeable: "*Foltz* required the Magistrate Judge to examine the documents to determine whether traditional protections and compelling reasons to protect the sealed documents existed."

of a meaningful discussion and analysis by the Magistrate Judge, of the factors she considered in her 'compelling reasons' determination." This proposed approach is upside down. The judge need not document compelling reasons to unseal; rather the proponent of sealing bears the burden with respect to sealing. A failure to meet that burden means that the default posture of public access prevails.

Even so, the magistrate judge did not summarily order the production of the City's documents. Rather, she conducted an "exhausting if not exhaustive" *in camera* review of the materials.[7] After this review, the magistrate judge noted that "the testimony and documents attached to the dispositive motions do not contain information that could be used for 'scandalous or libelous' purposes," and that these documents did not contain sensitive personal information. She also determined that deposition testimony on confidential informants and criminal investigations was "years old" and "largely resulted in criminal indictments which were made public over three years ago." She found, however, that the personal information of Kamakana and various law enforcement officers (home addresses and social security numbers) met the "compelling reason" standard.

---

[7]In *Foltz*, we rejected the argument that an *in camera* review was an inadequate procedure for determining whether sealed records contain confidential information:

> [T]here are few, if any, alternatives to *in camera* inspection that do not defeat the purpose of the rules and privileges protecting confidential material. As a result, we rely in the first instance upon the district court conducting the *in camera* inspection to assess critically the arguments of the party opposing disclosure. Meaningful appellate review, made possible by the district court's articulation of compelling reasons for its decision supported by specific factual findings, provides a second line of defense.

331 F.3d at 1136 n.6 (citations omitted).

It is difficult to know what more detail the magistrate judge could have provided in addressing the City's request to keep these documents sealed, especially since the City itself never provided specific "compelling reasons" to grapple with and consider. When *sealing* documents attached to a dispositive pleading, a district court must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad*, 49 F.3d at 1434. In the absence of specifically articulated reasons, "meaningful appellate review is impossible." *Id.* at 1435.[8] It makes little sense, however, to require the same specificity where the court is simply effectuating the presumption of public access by *unsealing* documents covered by a blanket protective order.

[9] A review of the record points up the inadequacy of the City's declarations, which largely make conclusory statements about the content of the documents—that they are confidential and that, in general, their production would, amongst other things, hinder CIU's future operations with other agencies, endanger informants' lives, and cast HPD officers in a false light. These conclusory offerings do not rise to the level of "compelling reasons" sufficiently specific to bar the public access to the documents. Under these circumstances, and given the detail of the judge's analysis and the case law, we conclude that the magistrate judge did not abuse her discretion in declining to seal the documents attached to summary judgment motions.[9]

---

[8] *See also Kasza v. Browner*, 133 F.3d 1159, 1175 (9th Cir. 1998) (remanding and requiring the court provide a statement of reasons "should it determine in its discretion to leave the seal in place"); *Erection Co.*, 900 F.2d at 170 (remanding case in which the district court sealed a consent decree because "the record gives no hint of whether the court considered any or all . . . factors and arguments").

[9] It bears noting that because the parties de facto sealed the record through their stipulated protective order, it is easy to get mixed up both in articulating the burden and the result. For example, as a consequence of this posture, the orders relate to *unsealing* documents. Thus, the parties were often arguing why documents that were sealed should not be unsealed. The effective bottom line is that the district court was determining whether documents should be sealed.

## B.  THE UNITED STATES

In appealing the magistrate judge's order, the United States requested a limited number of specific redactions of documents filed with dispositive motions. These redactions have the virtue of being limited and clear, identifying specific names or references to be kept secret. The problem is the broad, categorical approach the United States took to justify these redactions. It asserted a blanket rule that, as a non-party to the litigation, it was entitled to rely on the protections of the stipulated protective order. Although the United States proposed specific redactions, it justified them by invoking general categories of privileges without elaboration. Finally, the United States claimed that it sought redactions for information that was "traditionally kept secret."

### 1.  Non-Party Reliance on Protective Order

[10] The United States argues that, as a non-party to the litigation, it relied on the stipulated protective order when consenting to provide depositions of federal witnesses and documents, and that such reliance constituted a compelling reason sufficient to overcome the presumption of access. We have no such categorical rule regarding protective orders. To the contrary, we have held that a non-party's reliance on a blanket protective order is unreasonable and is not a "compelling reason" that rebuts the presumption of access. *Foltz*, 331 F.3d at 1138; *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir. 1992) (noting that "[t]he extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery" and that reliance on a "stipulated . . . blanket protective order" does not justify sealing court records).

[11] The position of the United States illustrates the hazard of stipulated protective orders. These orders often contain provisions that purport to put the entire litigation under lock and key without regard to the actual requirements of Rule

26(c). Like many pretrial protective orders, the judge signed off on the order without the benefit of making an individualized determination as to specific documents. The order here was geared primarily to discovery, but with a recognition that confidential documents may find their way into a court file or be used at trial. For example, in addition to recognizing that the court could modify the order at any time for "good cause," the order required that the parties obtain a court order to file materials under seal. Thus, the United States should have been on notice that confidential categorization of discovery documents under the protective order was not a guarantee of confidentiality, especially in the event of a court filing. Although the magistrate judge "expressly approved and entered the protective order," the order contained no good cause findings as to specific documents that would justify reliance by the United States. *See Beckman*, 966 F.2d at 476. Thus, the claimed reliance on the order is not a "compelling reason" that rebuts the presumption of access. *See Foltz*, 331 F.3d at 1138.

## 2. Specificity of Compelling Reasons

Although the United States identifies the redactions it seeks by page number and line number, it does not provide similarly specific compelling reasons to justify these redactions. Instead, the United States purports to justify each redaction by listing one of four general categories of privilege (privacy, law enforcement, confidential source, and ongoing investigation). Simply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden.

[12] We note that these redactions and justifications are the same ones the United States offered under the good cause standard of Rule 26(c). The government took no steps to explain how these asserted privileges also met the more demanding "compelling reasons" standard. As we explained in *Foltz*, a "good cause" showing *without more* will not sat-

isfy a "compelling reasons" test. *See id.* at 1135-36. Because
the United States simply resubmitted its good cause showing
*without more*, the magistrate judge was well within her discre-
tion to deny the redactions it sought under the compelling rea-
sons standard.

A review of the United States' proposed redactions sup-
ports the decision to unseal the records. For example, many
names or references for which the United States sought redac-
tion were either already publicly available or were available
in other documents being produced to the Honolulu Adver-
tiser. The magistrate judge noted an example of this phenome-
non: The United States sought redactions for references to
Marirose Tangi and Gabriel Aio even though both were men-
tioned by name in a press release issued by the United States
Attorney's Office for the District of Hawaii.

There are more examples. In one set of redactions, the
United States sought to delete deposition references to events
and persons mentioned by name in Kamakana's complaint.
Another set of redactions would delete the names of persons,
referred to only by code name in Kamakana's complaint,
whose depositions (and names) were ordered produced before
the United States' proposed redactions.[10] Finally, another pro-
posed redaction was based on the "ongoing investigation"
privilege even though the name of the operation was refer-
enced several times without redaction on the same page.

In her order, the magistrate judge acknowledged the nature
of Kamakana's claims and concluded that "the testimony and
documents concerning this matter are of significant public

---

[10]For instance, the United States sought to seal any mention of the real
name of the person identified as "A.B." in Kamakana's complaint. Yet
"A.B." was deposed during discovery, and the deposition transcript listed
under A.B.'s real name was marked for unsealing by the special master in
2003, long before the magistrate judge denied the United States the redac-
tion in January 2004.

concern." She also determined that the testimony and documents did not contain "sensitive personal information" or information that would be used for "scandalous or libelous" purposes. Finally, as to the documents she ordered to remain sealed, the magistrate judge concluded that disclosure of the officers' home address and social security numbers could expose the officers and their families to harm or identify theft.

### 3.    "Traditionally Kept Secret" as Justification

[13] The United States suggests that documents subject to the privacy, law enforcement, and official information privileges are "traditionally kept secret" and therefore subject to seal.[11] These privileges do not automatically fall within the "traditionally kept secret" exception. This phrase is a term of art specific to the right of access; a class of documents is covered by that term if there is "*neither* a history of access *nor* an important public need justifying access." *Times Mirror*, 873 F.2d at 1219 (emphasis added). Few documents are categorized thus because the consequences are drastic—"there is no right of access to documents which have traditionally been kept secret for important policy reasons," *id.*, meaning that a party need not show "compelling reasons" to keep such records sealed.

[14] Thus far, we have identified two types of documents as "traditionally kept secret": grand jury transcripts and warrant materials during the pre-indictment phase of an investigation. *Id.* Though these documents may roughly fall into the category of law enforcement, they are very specific types of documents that warrant the highest protection. We do not readily add classes of documents to this category simply because such documents are usually or often deemed confidential.[12] Indeed, even the documents we have identified as "tra-

---

[11]The City also puts forth this argument.

[12]*Cf. U.S. v. Schlette*, 842 F.2d 1574, 1583 (9th Cir. 1988) ("We agree that presentence reports are confidential documents. But 'confidentiality' is not some talismanic utterance that can justify a refusal to disclose the contents of a presentence report when a sufficient showing supporting disclosure has been made.").

KAMAKANA V. CITY AND COUNTY OF HONOLULU        5413

ditionally kept secret" are not sacrosanct.[13] Simply invoking a blanket claim, such as privacy or law enforcement, will not, without more, suffice to exempt a document from the public's right of access.

[15] Neither will it suffice to show, as the United States argues, that a document merits sealing because it would be exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Such exempt documents are not automatically privileged in civil discovery. *See Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984) ("If information in government documents is exempt from disclosure to the general public under FOIA, it does not automatically follow the information is privileged . . . and thus not discoverable in civil litigation."). "It is unsound to equate the FOIA exemptions and similar discovery privileges" because the two schemes serve different purposes. *Id.* FOIA is a statutory scheme directed to regulating the public access to documents held by the federal government; the public's "need" for a document is unrelated to whether it will be disclosed. *See Maricopa Audubon Soc'y v. United States Forest Serv.*, 108 F.3d 1082, 1087 (9th Cir. 1997). By contrast, the public right of access to court documents is grounded on principles related to the public's right and need to access court proceedings. *See Friedman*, 738 F.2d at 1344. Thus, we will not import wholesale FOIA exemptions as new categories of documents "traditionally kept secret" under *Times Mirror*.

III.  NON-DISPOSITIVE MOTIONS—DOCUMENTS COVERED BY THE "GOOD CAUSE" STANDARD

Finally, we address the magistrate judge's decision to

---

[13]*See, e.g., In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 782 (9th Cir. 1982) ("It is sometimes possible for a nonparty to a grand jury proceeding to obtain access even to the transcripts of those proceedings.").

unseal the documents attached to non-dispositive motions. The City claims that in adopting the reports of the special master, the magistrate judge made a good cause determination to which she was bound by the law of the case. Under the City's theory, the judge was thus precluded from undertaking a later review and reclassification of the documents.

Under the law of the case doctrine, a court "is generally precluded from reconsidering an issue previously decided by the same court . . . in the identical case." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (citing *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)). Nonetheless, a trial judge has broad discretion to reconsider her own interlocutory, pre-trial evidentiary rulings, particularly when no jury trial is involved. *See Amarel v. Connell*, 102 F.3d 1494, 1515, 1516 (9th Cir. 1996) (" '[T]he interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment . . . .' ") (quoting *In re United States*, 733 F.2d 10, 13 (2d Cir. 1984)). In *Amarel*, we faced the "delicate problem of two district judges exercising their 'broad discretion' over evidentiary rulings in different phases of the same case and reaching contradictory results." *Id.* at 1515. We held that it was not an abuse of discretion for the second district judge to allow the admission of evidence prohibited by the first district judge, *id.* at 1516, because "[t]here is 'no imperative duty to follow the earlier [evidentiary] ruling—only the desirability that suitors shall, so far as possible, have reliable guidance how to conduct their affairs.' " *Id.* at 1515 (quoting *In re United States*, 733 F.2d at 13).

Here, no law of the case is at issue, nor do we have a "delicate problem" of conflict between the rulings of two district judges. Instead we have the magistrate judge's further review of the special master's discovery findings, which are always subject to court review.

The magistrate judge initially approved, without commentary, two reports by the special master, of May 2003 and September 2003, sealing certain documents of the City for good cause. In her October 2003 order adopting the special master's September 2003 report, the judge laid out a procedure for reconsideration and/or clarification of the report. In addition, the order sets out controlling precedent, including the then-recent *Foltz* decision from this court. Finally, the judge wrote that "[t]he parties should be well aware that, by his findings in the Report adopted by this Court, the Master has made the 'good cause' determination and, absent an abuse of discretion, this Court will not set aside that determination."

After the City moved for reconsideration of the special master's report, the magistrate judge meticulously reviewed every document for which confidentiality was sought and performed her own, independent "good cause" analysis. In her January 22, 2004 order requiring the City to unseal most of those documents, including the ones the special master had found good cause to keep sealed, she concluded that the City "[had] not made the requisite showing of good cause except as to those documents containing Plaintiff's medical records." She examined each of the reasons presented by the City—the deliberative process privilege, the law enforcement privilege, the official information privilege, privacy interests, and embarrassment—and found that none of these had been asserted with sufficient particularity, noting that "City Defendants' arguments fail to demonstrate any specific prejudice or harm."

[16] The City seeks to cast this comprehensive review in a negative light by suggesting that the decision to overrule the special master was somehow unfair or unwarranted. To the contrary, we embrace the judge's decision to carefully review every document in light of the change in intervening law and in the face of the somewhat tepid and general justifications offered for sealing the documents. It also bears noting that the parties were always on notice, by virtue of the protective

5416    KAMAKANA V. CITY AND COUNTY OF HONOLULU

order itself and an order entered by the district judge, that "[t]he court reserves the right to unseal materials . . . if . . . the court determines that they should be available to the public or otherwise do not merit sealed status." The judge took seriously the presumption of public access and did so in accord with precedent from the Supreme Court and this court. Given these facts, we "will not second guess the exercise of the considerable discretion" allowed her. *Amarel*, 102 F.3d at 1516. We hold that the magistrate judge did not abuse her discretion in ordering the City to produce documents attached to non-dispositive motions.

**AFFIRMED.**